# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| VINE OIL & GAS LP, VINE MANAGEMENT SERVICES LLC, BRIX OIL & GAS LP, and BRIX OPERATING LLC | § § § § § § § § § § § § | Civil Action No. 4:19-CV-00346 Judge Mazzant |
| *Plaintiffs*, | | |
| v. | | |
| INDIGO MINERALS, LLC, and INDIGO NATURAL RESOURCES LLC, | | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Indigo's Motion to Dismiss for Failure to State a Claim and Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer to the Southern District of Texas (Dkt. #25).

After reviewing the relevant pleadings and motions, the Court finds the motion should be **DENIED**.

## BACKGROUND

### I. Factual Background

Plaintiff Vine Oil & Gas LP is a Delaware limited partnership with its corporate office in Plano, Texas.[1] Plaintiffs Vine Management Services LLC, Brix Oil & Gas LP, and Brix Operating LLC (together with Vine Oil & Gas LP, "Vine") are related entities located in Plano, Texas. Vine

---

[1] The Court recognizes that all four Plaintiffs are unincorporated entities whose citizenship for purposes of diversity jurisdiction is determined based on the citizenship of their members. However, since the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, it need not discuss Plaintiffs' membership. It includes the location of Plaintiff Vine Oil & Gas LP's "corporate office," designated as such on Vine's website, only to give context to the discussion, *infra*, about where the alleged trade secret misappropriation can be considered to have "occurred." Where Vine is "located" for these purposes—Plano, Texas—is not disputed by the parties.

is a private oil and gas company engaged in the business of developing the Haynesville and Mid-Bossier shales. Vine holds a significant working interest in the Haynesville Basin, and it maintains production sites in a variety of parishes across northern Louisiana.

Defendant Indigo Natural Resources, LLC, a Texas limited liability company with its corporate office in Houston, Texas, is a private natural gas and natural gas liquids producer, engaged in the business of developing the Haynesville Shale, the Bossier Shale, and the Holly Vaughn formation. Defendant Indigo Minerals, LLC (together with Indigo Natural Resources, LLC, "Indigo"), a Texas limited liability company in Houston, Texas, is a private oil and gas exploration company engaged in aggregating mineral interests and acquiring and developing working interests in oil and gas wells located in East Texas and throughout Louisiana, Mississippi, and Alabama.

Vine and Indigo are apparently competitors in the Haynesville Basin and elsewhere. In an effort to secure and maintain a competitive advantage over other market players, Vine gathers performance data from each of its drilling operations and stores it in a secure database—referred to as the "Pason database." In addition to performance data, the Pason database stores other confidential information, including Vine's trade secret processes, formulas, and techniques. Vine periodically grants access to the Pason database to employees, consultants, and other third parties who it determines ought to have access to its confidential information; in turn, those with access agree to keep the information they access confidential "through either the employee handbook or [a Master Services Agreement (MSA)]" (Dkt. #1).

One such person with access to the Pason database was Daniel Ho, an employee of Halliburton Energy Services ("Halliburton"). Vine hired Halliburton to provide it with various engineering services, and the companies entered a MSA whereby Halliburton and its employees

agreed to keep all Vine information confidential. During the engagement between Vine and Halliburton, Mr. Ho had access to the Pason database: his role was to evaluate Vine's performance and advise Vine on how it could improve, and this involved accessing Vine's confidential information. When Halliburton later promoted Mr. Ho, allegedly in or around May 2017, Vine required that Mr. Ho's access to the Pason database and its other confidential information be terminated.

On or about April 30, 2019, two Vine employees allegedly spoke with Todd Epperson, a representative from Ulterra Drilling Tech, LP, where they learned that an Indigo representative had apparently told Mr. Epperson that he, the Indigo representative, "had access to all of Vine's data" (Dkt. #1). Upon receiving this information, Vine investigated the matter and discovered that within the past year, the Pason database was accessed over 32,000 times with Mr. Ho's credentials. Hundreds of different IP addresses are alleged to have accessed the database, sometimes from different locations at the same time.

Vine claims that Mr. Ho gave his login credentials to multiple users at Indigo, who Vine claims then used those credentials to access the Pason database and view Vine's confidential information. Vine's position is that, during the period in question, neither the Indigo users nor Mr. Ho had access to the Pason database or Vine's permission to access the Pason database; that Indigo accessed and used Vine's confidential information, including its trade secrets; that Indigo has attempted to conceal its usage of Vine's trade secrets; and that as a result, Indigo's performance has improved at Vine's expense. Further, Vine alleges that that Mr. Ho obtained his login credentials at its headquarters in Plano, Texas; that its trade secrets were developed and used daily at those headquarters; that its trade secrets were used in its operations in the Haynesville Shale, which is spread across Panola, Harrison, Rusk, Shelby, San Augustine, Sabine, Gregg, Marion,

Upshur, and Nacogdoches counties; and that at least one IP address located in Collin County, Texas accessed the Pason database approximately 86 times.

Vine's specific legal claims are (1) misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, codified at §§ 134.001–134.005 of the Texas Civil Practice and Remedies Code; (2) misappropriation of trade secrets under the Defense of Trade Secrets Act, codified at 18 U.S.C. § 1832; and (3) violations of the Computer Fraud and Abuse Act, codified at 18 U.S.C. § 1030.

## II. Procedural History

On May 10, 2019, Vine filed a complaint against Indigo (Dkt. #1).[2] On June 4, 2019, Indigo filed a Motion to Dismiss for Failure to State a Claim and Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer to the Southern District of Texas (Dkt. #25). On June 18, 2019, Plaintiffs filed a consolidated response (Dkt. #30). On June 25, 2019, Indigo filed a reply (Dkt. #37).

## LEGAL STANDARD

### I. Rule 12(b)(6) Motion

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded

---

[2] When the Complaint was filed, Daniel Ho was joined as a defendant (Dkt. #1). On August 15, 2019, Mr. Ho was voluntarily dismissed pursuant to Rule 41(a)(1)(i) (Dkt. #44), leaving only the Indigo entities as defendants.

facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## II. Rule 12(b)(3) and §§1404(a) and 1406(a) Motions

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on [the] Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008). "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238. If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

Further, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304,

313 (5th Cir. 2008). However, there is a strong presumption in favor of a plaintiff's choice of his or her home venue, "which may be overcome only when the private and public factors [cited below] clearly point towards trial in the alternative forum." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'" *Id.* (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

"The threshold inquiry when determining eligibility for transfer is 'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed,' or whether all parties have consented to a particular jurisdiction." *E-Sys. Design, Inc. v. Mentor Graphics Corp.*, 4:17-CV-00682, 2018 WL 2463795, at *1 (E.D. Tex. June 1, 2018) (quoting *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004)). If the threshold inquiry is satisfied, "the focus shifts to whether the party requesting the transfer has demonstrated the 'convenience of parties and witnesses' requires transfer of the action, considering various private and public interests." *Int'l Fidelity Ins. Co. v. Bep Am., Inc., et al.*, A-17-CV-973-LY, 2018 WL 2427377, at *2 (W.D. Tex. May 29, 2018) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974)).

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." . . . The public interest

7

factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Volkswagen II*, 545 F.3d at 315 (citations omitted). These factors are "not necessarily exhaustive or exclusive" and "none can be said to be of dispositive weight." *Vivint La., LLC v. City of Shreveport*, CIV.A. 14-00617-BAJ, 2015 WL 1456216, at *3 (M.D. La. Mar. 23, 2015) (quoting *Volkswagen I*, 371 F.3d at 203).

## ANALYSIS

Indigo moved to dismiss Vine's claims pursuant to Rules 12(b)(6) and 12(b)(3), as well as to dismiss or transfer under 28 U.S.C. §§ 1404(a) and 1406(a). For the reasons discussed below, the Court finds that the motion should in all respects be denied. The Court addresses each motion in turn.

**I.      Rule 12(b)(6) Motion[3]**

After reviewing the complaint, the motion to dismiss, the response, and the reply, the Court finds that Vine has stated at least plausible claims for purposes of defeating a Rule 12(b)(6) motion to dismiss.

**II.     Rule 12(b)(3) Motion and Motion to Dismiss or Transfer Venue Pursuant to 28 U.S.C. §§ 1404(a) and 1406(a)**

Indigo argues that this case should be dismissed because venue is improper in the Eastern District of Texas under 28 U.S.C. § 1391(b). The Court disagrees. Under 28 U.S.C. § 1391(b)(2), venue in the Eastern District of Texas is proper as to Indigo.

28 U.S.C. § 1391(b) provides, in relevant part, that venue is proper in:

---

[3] As a general rule, the Court resolves motions to dismiss under Rule 12(b)(6) after resolving motions to dismiss under Rule 12(b)(3). However, because the parties briefed the Rule 12(b)(6) motion before the Rule 12(b)(3) motion, the Court addresses the parties' arguments in that order.

8

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

28 U.S.C. § 1391(b)(1)–(2).

Applying § 1391(b)(2), it is clear to the Court that venue is proper in the Eastern District of Texas as to Indigo because a substantial part of the events giving rise to Vine's claims against Indigo occurred in this district and a substantial amount of the property that is the subject of this action is situated in this district.

Vine's theory of relief in this case is theft and misappropriation of trade secrets, and a substantial part of the events giving rise to theft and misappropriation of trade secrets causes of action may occur in the judicial district where the injuries occurred. *See WorldVentures Holdings, LLC v. Mavie*, No. 4:18-cv-393, 2018 WL 6523306, at *15 (E.D. Tex. Dec. 12, 2018) (quoting O'Connell & Stevenson, Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial Nat. Ed. ¶ 4:60 (2018) (explaining that a "substantial part" of the events or omissions may potentially occur "in tort actions, where the parties acted or where the injuries occurred) (citing *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992); *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)))).

Vine's claims against Indigo are based on allegations that Vine disclosed some confidential information to Indigo in this district; that Indigo improperly used that information to compete with Vine in this district; and that Vine suffered harm in this district as a result. Accepting as true *all* allegations in the complaint and resolving *all* conflicts in favor of Vine, the Court finds that, as stated, a substantial part of the events giving rise to Vine's claims against Indigo occurred in this district and thus that venue is proper in the Eastern District of Texas.

Moreover, Vine claims that its trade secrets were developed at its corporate office in Plano, Texas and used there daily. These allegations, taken as true, are sufficient to satisfy the Court that a substantial amount of the property that is the subject of this action is situated in the Eastern District of Texas. *See Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681, 690 (S.D. Tex. 2010) (finding venue proper in the Southern District of Texas under § 1391(b)(2) based on plaintiff's allegation that its "central database of clients and other information that [defendants] allegedly misappropriated," along with other information plaintiff claimed was protected, was located and generated in Houston, Texas).

Finally, the Court is unpersuaded by Indigo's argument that, due to convenience, the case should be transferred to the Southern District of Texas under § 1404(a).[4] As Indigo correctly observes, the case could have been brought in the Southern District of Texas—satisfying the threshold inquiry. But venue is proper in the Eastern District of Texas, and after considering the public and private interest factors, discussed below, the Southern District does not clearly emerge as the more convenient forum.

   *A. Public Interest Factors*

The public interest factors are:

(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of law or in the application of foreign law.

*Volkswagen II*, 545 F.3d at 315 (citations omitted).

---

[4] The Court notes that Indigo dedicated only three pages in its brief to arguing that the case should be transferred to the Southern District. Moreover, it dedicated only two paragraphs to applying the public and private interest factors to the facts of this case. As a result, the Court engaged the analysis on its own and applied the public and private interest factors.

10

The parties do not dispute whether there exist any administrative difficulties in either district flowing from court congestion. Accordingly, the Court considers the first factor neutral.

The Court further finds that the Eastern District does have an interest in deciding this matter. Though it may not be the *only* judicial district in the state with an interest in resolving this case, the Court is satisfied that the Eastern District has a significant "factual connection" to the events giving rise to this action to warrant resolving the matter. *Volkswagen I*, 371 F.3d at 206. Indeed, Vine's trade secrets were allegedly generated and misappropriated in the Eastern District. Accordingly, the second factor either counsels in favor of keeping the case in the Eastern District or is neutral.

Finally, as both parties recognize, the Eastern and Southern Districts are equally familiar with the law that will govern this case, and this case presents no problems of conflicts of laws or issues related to applying foreign law. Accordingly, the third and fourth factors are neutral.

B. *Private Interest Factors*

The private interest factors are:

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Volkswagen II*, 545 F.3d at 315 (citations omitted).

Indigo argues that all four private interest factors counsel in favor of transferring the case to the Southern District. The Court disagrees.

First, the Court is not persuaded that the Southern District has easier access to relevant sources of proof than the Eastern District. Taking Vine's allegations as true, there appears to be relevant information—including Vine's confidential information and trade secrets, as well as information related to any unauthorized logins to the Pason database—located in the Eastern

11

District.  Accordingly, the Court finds that the first factor counsels in favor of keeping the case in the Eastern District or is neutral.

The second and third factors are also neutral.  The Court is not persuaded that compulsory process to secure the attendance of witnesses is more available in the Southern District than the Eastern District.  Nor is it persuaded that the cost of attendance for willing witnesses is significantly higher in the Eastern District than it is in the Southern District.  This is because Vine's factual allegations make clear that there will likely be witnesses from both districts: witnesses from the Southern District, since Halliburton and Indigo are located there; and witnesses from the Eastern District, since Vine and certain oil and gas production sites are located there.  Without more, it is far from clear whether the cost of attendance for willing witnesses and the availability of compulsory process to secure their attendance would differ based on the district.  Accordingly, the Court finds that the second and third factors are neutral.

Finally, there is no convincing argument or evidence presented to support the notion that trial in the Southern District would be easier, more expeditious, or less expensive than it would be in the Eastern District.  The mere fact that Halliburton is located in Houston does not carry the day for Indigo.  Accordingly, the Court finds that the fourth factor is neutral.

The Court thus finds that six (6) of the private and public interest factors are neutral, and two (2) factors either weigh slightly against transfer or are neutral. Therefore, the Court finds that Defendants have not satisfied their burden to show that the Southern District of Texas is a "clearly more convenient" forum for this litigation.  *Volkswagen II*, 545 F.3d at 315.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Indigo's Motion to Dismiss for Failure to State a Claim and Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer to the Southern District of Texas (Dkt. #25) is in all respects **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 30th day of August, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE